UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **DEREK CASTONGUAY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:21-cv-00083-JDL |
| | ) |
| **MAC'S CONVENIENCE** | ) |
| **STORES dba CIRCLE K,** | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

The Plaintiff, Derek Castonguay, alleges that the negligence of a store clerk employed by the Defendant, Mac's Convenience Stores dba Circle K (hereinafter "Mac's Convenience"), caused Castonguay to be seriously injured by a third party who physically assaulted Castonguay at the store and then followed Castonguay after he left the store and shot him minutes later at an off-premises location. Mac's Convenience has filed a Motion for Judgment on the Pleadings (ECF No. 16), pursuant to Federal Rule of Civil Procedure 12(c), arguing that Castonguay's complaint fails to state a claim upon which relief may be granted, because Maine law does not impose a duty on a convenience store to prevent a customer from being assaulted by a third party after that customer has left the store. For the reasons that follow, I deny the motion.

**I. FACTUAL BACKGROUND**

The following facts are drawn from the Plaintiff's First Amended Complaint (ECF No. 40).

1

Mac's Convenience operates a 24-hour convenience store located on High Street in Caribou. The store is approximately 600 feet from the Caribou Police Department. Derek Castonguay is a resident of Van Buren, Maine, and was 17 years old when the following events occurred.

Castonguay entered the store on January 11, 2020, at 12:19 a.m. He had arrived at the store in a car that remained parked outside. The female driver and a male passenger stayed in the car. Castonguay selected snack foods to purchase and then lined up to pay for them at the cash register. At 12:27 a.m., the store's exterior video surveillance camera captured footage of a man leaning through the car's backseat window. The man then assaulted the car's male passenger who was still seated in the back seat. The man then entered the store, walked directly toward Castonguay and punched Castonguay twice in the head. This assault occurred in plain view of the store's overnight clerk. Castonguay dropped his items and ran toward the back of the store and away from the assailant, who remained in the store, pacing back and forth in front of the check-out counter before he left.

The car's male passenger then entered the store, bleeding from his mouth, and told the store clerk that he had been assaulted in the parking lot. Next, at 12:30 a.m., the female driver of the car drove away, leaving Castonguay and the male passenger stranded inside the store for approximately 45 minutes until a taxi arrived for them.

The store clerk had encountered the assailant in the store previously and suspected that he was involved in drug trafficking. As Castonguay and the male passenger were waiting for the taxi to arrive, they expressed worry that the assailant would return to hurt them. They were particularly concerned because, as they told

2

the store clerk, they believed that the assailant had a gun. The store clerk was also concerned that the assailant would return and cause additional harm, but he ultimately took no action.

Eventually, the taxi arrived and Castonguay and the male passenger got in and left. The assailant, who was in his own vehicle, had remained close by and watched as Castonguay and the male passenger entered the taxi. The assailant tailed the taxi as it departed from the store. After driving for three minutes, the taxi stopped, at which point the assailant stopped his car and got out. The assailant approached the taxi, drew a handgun, and fired three shots into the taxi. One of the bullets struck Castonguay, causing severe and permanent injuries.

## II.  LEGAL ANALYSIS

### A.  Standard of Review

"A motion for judgment on the pleadings bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and these two types of motions are treated in much the same way. . . . Consequently, we take the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant." *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018). "To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *ACA Connects – Am.'s Commc'ns Ass'n v. Frey*, 471 F. Supp. 3d 318, 323 (D. Me. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must take well-pleaded facts in the complaint as true and must draw all reasonable inferences in the nonmovant's favor. *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48

(1st Cir. 2018). Facts are well-pleaded when they are non-conclusory and non-speculative. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006).

**B.     Duty**

Castonguay contends that Mac's Convenience, as a business proprietor of a convenience store, owed him a legal duty under Maine common law to protect him from a foreseeable risk of harm posed by the third-party assailant. He further asserts that because the assault began at the store, it was foreseeable that he remained at risk of further harm from the assailant. In response, Mac's Convenience argues that although a convenience store owes a duty of reasonable care to its customers while they are on the premises—which sometimes includes protection from foreseeable harm caused by third parties—under Maine law, that duty ends when a customer leaves the store's premises. Additionally, Mac's Convenience contends that Maine law does not require the store to protect a customer from suffering an assault by a third-party off the premises. I begin my analysis of the parties' arguments by considering the applicable principles of negligence under Maine law.

Negligence is comprised of four elements: "(1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." *Bell ex rel. Bell v. Dawson*, 2013 ME 108, ¶ 17, 82 A.3d 827 (quoting *Est. of Smith v. Cumberland Cty.*,

4

2013 ME 13, ¶ 16, 60 A.3d 759). The motion for judgment on the pleadings turns on the question of whether Mac's Convenience owed a duty of care to Castonguay as a matter of law. "The existence of a duty of care is a question of law, while issues of the breach of a duty of care are usually questions of fact." *Reid v. Town of Mt. Vernon*, 2007 ME 125, ¶ 14, 932 A.2d 539. However, although the question of whether a duty exists is one of law, "the inquiry as to the existence of a duty is fact-intensive. . . . [W]e look to general principles of duty, with particular emphasis on the undisputed facts relevant to foreseeability, control, and the relationship of the parties" to determine whether a duty exists. *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 14, 118 A.3d 789.

Maine generally follows a no-duty rule, so that in instances of a failure to act, "absent a special relationship, the law imposes no duty to act affirmatively to protect someone from danger unless the dangerous situation was created by the defendant. Only when there is a 'special relationship,' may the actor be found to have a common law duty to prevent harm to another, caused by a third party." *Belyea v. Shiretown Motor Inn, LP*, 2010 ME 75 ¶ 9, 2 A.3d 276 (quoting *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 14, 738 A.2d 839). Such a special relationship exists between the proprietor of a convenience store and the store's customers. A proprietor may be "liable for an assault upon a guest or patron by another guest, patron, or third person where he has reason to anticipate such assault, and fails to exercise reasonable care under the circumstances to prevent the assault or interfere with its execution." *Kaechele v. Kenyon Oil Co.*, 2000 ME 39, ¶ 8, 747 A.2d 167 (quoting *Brewer v. Roosevelt Motor Lodge*, 295 A.2d 647, 651 (Me. 1972));

*see also Boudreau v. Shaws*, 955 F.3d 225, 234 (1st Cir. 2020). This duty may include "warning of or protection from a danger that originates from third persons outside the business premises," *Howe v. Stubbs*, 570 A.2d 1203, 1203 (Me. 1990), when that danger is reasonably foreseeable, *Kaechele*, 2000 ME 39 ¶ 10, 747 A.2d 167. Thus, a special relationship does exist if the proprietor has reason to anticipate that a patron will be assaulted and fails to exercise reasonable care under the circumstances to prevent the assault or interfere with it. I now turn to consider whether the store clerk here had reason to anticipate the assault against Castonguay, by considering the facts at hand related to foreseeability as analyzed in similar cases.

To begin, in *Boudreau v. Shaw's*, the First Circuit determined that the on-premises murder of a store patron by a third party was not foreseeable and, thus, that the store was not liable. 955 F. 3d at 225. *Boudreau* presented a tragic fact pattern: an elderly woman shopping at a supermarket was brutally murdered in the ice cream aisle by a regular customer of the store, and the victim's estate subsequently brought suit against the store asserting wrongful death and conscious pain and suffering under Maine law. *Id*. at 227. The First Circuit affirmed the district court's grant of summary judgment for the store after concluding that the store did not owe the woman a duty to protect her from the attack. *Id*. at 228. Shaw's had banned the assailant from the store four years prior to the attack because customers complained that she had scared them. *Id*. She was ultimately permitted to return to the store, and the manager asked the Loss Prevention Department to watch her, but the Loss Prevention Department never observed her behaving unusually. *Id*. at 229. On the day of the attack, the assailant visited the store twice,

6

first to purchase several items and then for a second time, during which two individuals observed her walking back and forth in an aisle as if she was shopping. *Id.* at 232. The First Circuit concluded that the attack was not foreseeable, and thus that Shaw's did not owe the victim a duty because, although Shaw's had previously banned the assailant and had observed her behaving bizarrely, "no Shaw's employee ever saw [the assailant] act violently, raise her voice, or threaten someone in the [] Shaw's." *Id.* at 235. Additionally, the assailant's behavior within the store prior to the assault did not make it foreseeable that she posed a danger to other customers. *Id.*

In contrast with *Boudreau*, the facts considered by the Law Court in *Kaechele* are more analogous to those presented here. In *Kaechele*, the Law Court determined that a 24-hour convenience store had a duty to protect a store patron from a reasonably foreseeable assault committed by a third-party in the store's parking lot. 2000 ME 39 ¶ 8, 747 A.2d 167. The third-party assailant in *Kaechele* attempted to buy cigarettes, was refused because he did not provide identification, and yelled obscenities and pounded the counter for fifteen minutes in protest, before leaving the store and banging on the front window. *Id.* at ¶ 3. Although another store patron was concerned and suggested that the police be called, neither of the two on-duty clerks called the police. *Id.* Two of the patrons then left the store and engaged in an altercation with the third party, which culminated in the third party assaulting one of the patrons in the parking lot, causing severe injuries. *Id.* The Law Court affirmed the jury's conclusion that the store reasonably should have foreseen the assault on the patron based on the evidence of the third-party assailant's tirade inside of the

7

store, the concern of store patrons and clerks who heard the tirade, the ignored suggestion to call the police, and the third-party assailant's escalating violence. *Id.* at ¶ 18.

The facts in *Kaechele* related to foreseeability are similar to those alleged here. When the third-party assailant arrived at the Mac's Convenience store, he first assaulted the male passenger seated in the back of the car Castonguay had arrived in, and then entered the store and assaulted Castonguay in full view of the store's clerk. Castonguay and the male passenger then remained in the store for 45 minutes while waiting for a cab, and they told the clerk that they were afraid they would be assaulted again and that they feared that the assailant was armed. On these facts, it was reasonably foreseeable that an assailant who had openly and brutally attacked Castonguay might again attack Castonguay on or near the store's premises. That the ultimate harm occurred off premises does not negate the existence of a duty that arose when a substantial risk of future harm became reasonably foreseeable to the store's clerk.

Mac's Convenience attempts to distinguish *Kaechele*, asserting that *Kaechele*'s recognition of a duty owed by a convenience store to its patrons is limited to protecting patrons from third-party harm perpetrated within the bounds of the store's premises. Mac's Convenience also relies on decisions from other states that have rejected the proposition that a business owner has a duty to protect patrons from third-party harm after leaving the property. *See Morris v. Legends Fieldhouse Bar & Grill, LLC*, 958 N.W.2d 817, 822 (Iowa 2021) (holding that although a strip club owed its patron a duty of reasonable care while he was on the premises, that duty ceased when he

8

voluntarily left the establishment because a "business owner's duty to protect patrons from third parties ends when they leave the premises"); *Seymour v. House of Blues New Orleans Rest. Corp.*, 309 So. 3d 805, 812 (4th Cir. 2020) (determining that, even though a fight between two bar patrons began on the premises, the bar had no duty to protect the plaintiff from a subsequent off-premises assault by the other patron later that night under the "general rule that a business proprietor is not liable for criminal acts of third persons that occur off its premises"); *Thiele v. Reiter*, 838 S.W.2d 441, 443-44 (Mo. Ct. App. 1992) (holding that a bar did not have a duty to protect a customer from being shot by a third-party off-premises).

The caselaw cited by Mac's Convenience does not control the outcome here because the cited decisions all involved negligence claims rooted in a theory of premises liability. As discussed earlier, Maine law recognizes a special relationship that generates a duty of care owed by a convenience store to its patrons. That duty is more expansive than traditional premises liability, as seen in the decisions offered by Mac's Convenience. Premises liability arises from the "general duty to provide reasonably safe premises, owed to all persons lawfully on the land," while a special relationship imposes a "*heightened* duty . . . to proactively prevent an assault . . . if it is reasonably foreseeable." *Belyea*, 2010 ME 75, ¶ 11, 2 A.3d 276. Castonguay's complaint does not assert negligence based on a theory of premises liability, and thus premises liability caselaw is inapposite.

Mac's Convenience's argument also elides the inquiry at hand by framing the store's duty as one that must have continued after Castonguay left the store. However, the question of duty here is centered on whether the store had a duty to

protect Castonguay from a risk of harm that arose when Castonguay was present at the store, even though the actual harm occurred several minutes after Castonguay left the store. The question of whether Mac's Convenience ultimately bears liability for the off-premises assault in this case will be answered not through the duty prong of the negligence analysis, but under the fact-based inquiry of whether Castonguay can demonstrate that the duty was breached and that the breach was a proximate cause of Castonguay's injuries. Mac's Convenience's argument that the store had no duty as a matter of law, based on the facts alleged in the complaint, is contrary to Maine negligence principles and, therefore, its motion for judgment on the pleadings must be denied.

### III.  CONCLUSION

For the reasons stated above, the Defendant's Motion for Judgment on the Pleadings (ECF No. 16) is **DENIED**.

**SO ORDERED.**

**Dated: August 10, 2022.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ JON D. LEVY
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**CHIEF U.S. DISTRICT JUDGE**